NO. 07-10-0221-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

MAY 2, 2011

_____

THOMAS JOSEPH STAUDER,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 251ST DISTRICT COURT OF RANDALL COUNTY;

NO. 21,299-C; HONORABLE ANA ESTEVEZ, PRESIDING

_____

***Memorandum Opinion***

_____

Before QUINN, C.J., HANCOCK , J. and BOYD, S.J.[1]

Thomas Joseph Stauder was convicted, after a bench trial, of possessing a prohibited weapon, that is, intentionally or knowingly possessing a chemical dispensing device.  The weapon in question was a device labelled "Mighty Midget," a "Continuous Discharge Tear Smoke CN Grenade" made by Smith & Wesson.  He contends that conviction should be reversed because 1) the evidence is legally insufficient to support

---

[1]John T. Boyd, Senior Justice, sitting by assignment.

his conviction, 2) the statute is unconstitutionally vague, and 3) he acted under a mistake of law and fact. We affirm the judgment.

*Sufficiency of the Evidence*

We review the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). Next, appellant argues that the evidence was insufficient to support his conviction because the State failed to establish that 1) "the device [possessed by him] was a chemical dispensing device which fell outside the statutory exception for small devices purchased for personal protection," 2) the tear gas grenade was "in fact capable of dispensing chemical at the time it was removed from [appellant's] possession," and 3) he was the one who committed or was charged with committing the crime. We overrule the issue.

As previously mentioned, appellant was charged with intentionally and knowingly possessing a chemical dispensing device. *See* TEX. PENAL CODE ANN. §46.06(a)(8) (Vernon 2003) (stating that a person commits an offense if he intentionally or knowingly possesses, manufactures, transports, repairs, or sells a chemical dispensing device). Such a device is defined as "a device, other than a small chemical dispenser sold commercially for personal protection, that is designed, made, or adapted for the purpose of dispensing a substance capable of causing an adverse psychological or physiological effect on a human being." *Id.* §46.01(14) (Vernon Supp. 2010). As can be seen from this definition, nothing is said about the item being presently capable of discharging a substance that causes adverse effects. Instead, it need only be designed, made, or adapted for the purpose of dispensing such a substance. Thus,

whether or not the grenade could actually dispense a chemical was unimportant given the evidence that it was made for that purpose.

Next, also appearing of record was the following evidence: 1) to discharge the contents of the "grenade," a pin must be pulled and a plunger pushed after which it will start burning in three seconds, 2) the "grenade" was not to be used indoors given the risk of fire caused by the quantum of heat emanating from the canister once activated, 3) the chemical substance within the "grenade" was for "riot control," that is, the item was "specifically designed for riot control" as opposed to personal defense, 4) the device can be thrown by hand or it can be shot "from various weapons that have been modified to project" it, 5) it can be activated by percussion, that is, it being struck against a hard surface, 6) the content of the "grenade" affects the eye ducts, causes tearing and involuntary closing of the eyes, creates a burning sensation on the skin, "exposed surfaces and . . . moist areas of the body . . . ," irritates mucous membranes, causes involuntary coughing and a "little heaviness in the chest," makes you feel like "you can't breathe," and causes eye tearing, burning to exposed skin, irritation to the nose, coughing, a feeling of inability to breathe, and psychological effects, 7) the heat "produced can catch objects on fire pretty easily" which explained the warning on the item to forego use indoors, 8) the device has caused death, 9) the "grenade" was not known to be "commercially available at [W]almarts or K-Marts or anything like that," 10) law enforcement entities purchase such weapons through a distributor after showing appropriate "credentials and paperwork," 11) there was no control over where the contents of the device spread once activated, 12) the substance disbursed consists of chemical compounds as opposed to "natural product[s]" like cayenne pepper, oleoresin

3

and capsicum which are derived from peppers, 13) the device appeared operative despite its age, 14) the dispensed substance is comparable to tear gas since it causes tearing, 15) the "grenade" is a "device that is manufactured to distribute or disperse a chemical agent," 16) the chemical expert and supervisor of the local police department bomb squad presented as a witness by the State was unaware of any device containing the substance found in this particular "grenade" to be "commercially available for personal defense," 17) the local SWAT unit no longer maintained the device in its inventory due to the deaths associated with it, and 18) the "grenade" canister was approximately five inches tall with a three-inch circumference.  The foregoing constituted some evidence from which a reasonable factfinder could conclude, beyond reasonable doubt, that the "grenade" possessed by appellant was a device designed, made, or adapted for the purpose of dispensing a substance capable of causing an adverse psychological or physiological effect on a human being.  And, from the testimony that it was used for riot control, could cause fires, was not recommended for indoor use, and was purchased through a distributor (as opposed to a commercial retail establishment) by law enforcement entities after showing appropriate credentials, the same factfinder could also conclude, beyond reasonable doubt that the "grenade" fell outside the scope of chemical dispersing devices allowed by the statute.  *See Briggs v. State,* 746 S.W.2d 331, 332 (Tex. App.–Dallas 1988, pet. ref'd) (finding the evidence sufficient to support conviction when it showed that the defendant possessed a tear gas grenade manufactured for the military as a riot control device which could only be activated by pulling a pin and the user had no control over the direction of the chemical spray).

4

As for the allegation that the State failed to establish appellant's identity, the following exchange took place at trial between the State and Officer Scott Chappell:

Q.    When Mr. Stauder was booked into jail, was he booked in for possession of a chemical dispensing device?

A.    Yes, he was.

Q.    Now, Thomas Joseph Stauder, II, was booked into jail that day.  Do you see that person in the courtroom?

A.    Yes, I do.

Because the officer did not specifically point to or describe where appellant was sitting, appellant argues that his identification as the accused was insufficient.   We disagree.

The lack of a formal in-court identification does not necessarily render the evidence insufficient to establish identity.   *See Purkey v. State,* 656 S.W.2d 519, 520 (Tex. App.–Beaumont 1983, pet. ref'd).   The latter may be shown by circumstantial evidence and reasonable inferences therefrom.  *Roberson v. State,* 16 S.W.3d 156, 167 (Tex. App.–Austin 2000, pet. ref'd).   And, the record at bar contains more than the exchange mentioned above.   Also found within it was inquiry by the trial court (*i.e.* the factfinder) as to whether "Mr. Stauder" was ready; to that question appellant replied "[y]es."   Appellant also presented a *pro se* motion to the trial court immediately before trial began wherein the court addressed appellant as "Mr. Stauder."   And, when the trial judge specifically asked "Mr. Stauder" how he pled after the indictment was read aloud, appellant answered, "Not guilty."   To this, we add appellant's own testimony when appearing on the witness stand wherein he expressly identified himself as "Thomas Joseph Stauder, II" and described how he possessed the prohibited device.   This and the reasonable inferences that can be made from it were enough to enable a factfinder

to conclude, beyond reasonable doubt, that appellant was the person found in the possession of and indicted and tried for the crime at issue. *See Sauceda v. State,* No. 07-03-0342-CR, 2005 Tex. App. LEXIS 7375, at *3-5 (Tex. App.–Amarillo September 6, 2005, no pet.) (not designated for publication) (holding the evidence legally and factually sufficient when the defendant admitted he was the person named in the indictment, when three witnesses testified that they knew the defendant, Joseph Sauceda, and no objection was made to the identification procedure).

### *Constitutionality of Statute*

Next, appellant argues that §46.05(8) is "unconstitutionally vague." We overrule the issue.

The same argument was addressed in *Briggs v. State.* Like appellant here, Briggs was tried and convicted of having a smoke or tear gas grenade. Furthermore, the evidence there reveals the substance within the grenade to have a like effect as that in the "grenade" here. And, it too was made for riot control. Given this, Briggs' conduct was found to be clearly within the core of the conduct proscribed by the statute. *Briggs v. State,* 746 S.W.2d at 333. And, because one to whose conduct a statute clearly applies may not successfully challenge it for vagueness, *Parker v. Levy*, 417 U.S. 733, 756, 41 L.Ed.2d 439, 94 S.Ct. 2547 (1974), Briggs lacked standing to pursue the vagueness allegation. *Briggs v. State*, 746 S.W.2d at 333. The same is no less true here.

6

*Mistake of Law*[2]

Finally, appellant asserts that no reasonable factfinder could but conclude that he acted under the reasonable belief that his conduct was lawful. This belief was founded upon his reading of *Briggs v. State*, 714 S.W.2d 36 (Tex. App.–Dallas 1986), *vacated*, 740 S.W.2d 803 (Tex. Crim. App. 1987). We overrule the issue for the simple reason that had he studied the litany of *Briggs* cases, he would have discovered that Briggs' conviction for unlawfully possessing a chemical dispensing device ultimately was upheld. And, it was upheld because having a tear gas grenade akin to the item at issue here clearly falls within the scope of conduct prohibited by the statute. *Briggs v. State*, 746 S.W.2d at 333.

Appellant admitted at trial that he did not completely review the second *Briggs* opinion (that is, the one issued by the Court of Criminal Appeals vacating the one he allegedly read) or the third *Briggs* decision wherein Briggs' conduct was found to clearly be within the statute's scope. So, at the very least, the factfinder could have found that he did not reasonably rely upon a written interpretation of the law. *See Green v. State*, 829 S.W.2d 222, 223 (Tex. Crim. App. 1992) (stating that "Section 8.03[3] was not created to allow a criminal defendant to rely upon old 'interpretive opinions, opinions that conflict with others, or on overruled opinions'").

---

[2]Appellant states in the title of his issue that there was also a mistake of fact but he has failed to brief that complaint.

[3]Section 8.03 of the Penal Code states that it is an affirmative defense to prosecution that a person reasonably believed the conduct did not constitute a crime and that, in doing so, he relied upon a written interpretation of the law contained in an opinion of a court of record. TEX. PENAL CODE ANN. §8.03(b)(2) (Vernon 2003).

And, to the extent that he testified that he did not know that possessing the "grenade" was prohibited by statute, we can only say that ignorance of the law is not an excuse.  This is especially true given his knowledge about the dispute in *Briggs*.   At the very least, the factfinder could have opted to disbelieve him.

Accordingly, we overrule all of appellant's issues and affirm the judgment.


Brian Quinn
Chief Justice

Do not publish.

8